## Case No. 12,624.

### SEDGWICK v. SHEFFIELD.

[6 Ben. 21.][1]

District Court, S. D. New York. April, 1872.

PAYMENT OF DEBT BY INSOLVENT—REASONABLE CAUSE TO BELIEVE IN INSOLVENCY.

1. P. & Co., being insolvent and knowing their condition, within four months before the filing of a petition in bankruptcy against them, paid, through their recognized and authorized agent, to S., $4,500, being a debt due to S., and payable on call. The assignee in bankruptcy of P. & Co. brought an action at law to recover back the money: *Held*, that, this payment having been made in the ordinary course of business, under proper general authority, and not prevented or repudiated by P. & Co., they being in the habit of having these payments made through these agencies, to individuals occupying the position of S., the only question for the jury was, whether S., in receiving this payment, had reasonable cause

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

to believe that P. & Co. were insolvent at the time, and had reasonable cause to believe that this payment to him was made with a view that he should have a preference in respect to this $4,500.

[See Alderdice v. State Bank of Virginia, Case No. 154.]

2. The payment having been made in the establishment of P. & Co., out of the money of, and by the recognized agent of, P. & Co., they being insolvent and not stopping the making of the payment, and the payment having had the effect to produce a preference in favor of S., the jury were bound to conclude, under the law, that the payment was made by P. & Co. with a view to give a preference.

3. If S., at the time he received this payment, had reasonable cause to believe that the firm of P. & Co. was then in such a condition that it was about to stop payment of its debts, for want of money with which to pay them as they matured, in the ordinary course of business, then he had reasonable cause to believe that the firm was insolvent, in the sense of the bankruptcy act [of 1867 (14 Stat. 517)], even though it had not actually stopped payment of its maturing obligations.

[This was an action at law by John Sedgwick, assignee, against Thomas T. Sheffield.]

BLATCHFORD, District Judge. Gentlemen of the Jury: The general nature of this suit you have learned during its progress. It is true, as stated by the counsel in summing up this case to you, that this is the first case under the 35th section of the bankruptcy act which has been brought in this court before a jury. Large numbers of suits, brought to set aside preferences, have been prosecuted and adjudicated in this court, sitting in equity, without a jury, where there was a prayer in the bill that the court would decree that mortgages given by way of preference, assignments given by way of preference, judgments recovered and executions issued by way of preference, papers and documents conferring an apparent title on the person receiving the preference, be set aside and declared null and void—a species of relief which gives to the court, sitting in equity, without a jury, jurisdiction. Some of these suits have been determined in favor of the party seeking to set aside the preference. Others have been determined in favor of the defendants. But, in this case, nothing took place which is sought to be impeached, but the naked payment of money. No documents or papers, to be set aside or declared null and void, passed between the parties—no mortgage, deed, conveyance, execution, judgment, or other instrument. Therefore, this suit has been brought as a suit at law, which, under the constitution of the United States, requires a trial by jury; and it is for you, gentlemen, on the facts in this case, as you shall understand those facts from the evidence, under the law and the interpretation of the statute as it shall be given to you by the court, to give your verdict in this case either for the plaintiff or the defendant.

This bankruptcy act, which, from the length

of time it has remained upon the statute-book, now some five years, must be assumed to have met the general approbation of the community, it having stood longer than any other bankruptcy act, of which this is the third, that we have had in the history of our government—this bankruptcy act has, for its main object, to distribute the property of the persons specified in it as liable to its provisions, equally among all their creditors, without preference to any of them; and the system laid down in this act, and applied in its administration by the courts administering it, is in marked contrast to what was the privilege of debtors and the rights of creditors, at least in the state of New York, prior to the passage of this act. The principle of the act proceeds upon a high policy, considered to be a benefit to the commercial and trading community. Before the passage of this act, any individual finding himself about to suspend payment, or to fail (as the ordinary expression is), or to be in a condition in which he was unable to pay all his creditors in full, dollar for dollar, could, subject to certain immaterial restrictions, exercise a choice and preference among his creditors, could devote his entire assets to pay in full such bona fide creditors as he chose to select, to the entire exclusion of others. That privilege is cut up by the roots by this bankruptcy act, and it is the intention of the act to produce that change, while, at the same time, it does not at all interfere with the ordinary pursuits of business. It is designed to protect creditors. It does not at all deal with that class of the community who transact their commercial business for cash, who, when they sell and deliver their goods, receive the money for them, or who, when they purchase their goods, pay the money for them; but it deals with those commercial transactions, and with those individuals engaged in commercial transactions, where there is a passage of property from one to another, without, at the same time, an extinguishment and liquidation, entire and final, of the consideration for that property, where the business is done on credit. The principle upon which it proceeds is, that while it does not interfere with the ordinary operations of business, while an individual can, if he will contract a debt, and not deal upon cash principles, protect himself by asking and demanding security at the time, and while the act protects all such transactions made in good faith, and for a present consideration, it says to creditors: "If you deal upon credit solely, without security, you shall all stand upon an equal footing, and it shall not be within the power of your debtor, when he is insolvent, to make a preference among you. You are free entirely, as creditors, not to give credit without getting security at the time. That privilege is open to you. Exercise it fully for a present consideration; or, if you have allowed a debt to become due to you, or to become contracted to you, obtain your security at a time when there is no possible chance of there being a violation of the bankruptcy law. But, if you will enter the domain of a simple creditor, the law sets before you, in plain language, that you are not thereafter, under certain specified circumstances, to obtain a preference, having waived your privilege, when you contracted your debt, of then and there obtaining the security which you might have obtained, but which you voluntarily relinquished, contracting your debt as a general creditor." The principle upon which the statute rests is manifest. It is, that any one of you, seeing a person apparently in prosperous circumstances, and trusting him upon what you see ostensibly to be his condition and his property, shall not some day suddenly find that you have been relying on a broken reed, that he has suspended payment and failed, and that you are to receive nothing, but that everything is given to certain preferred and favored creditors. The object underlying this legislation in the bankruptcy act is, that men shall not be exposed to the temptation of trading when they have no business to trade, when they are really insolvent, by borrowing money from individuals whom they can confidentially protect and prefer, and going into the market with such money, and using it to obtain credit for large purchases in dealing with their ordinary creditors in the business of trade, and, in the end, committing what amounts to a fraud under the circumstances of the case. This policy, introduced into the bankruptcy law, is founded upon the principles I have mentioned, and is regarded as wise and beneficial, compared with the former system.

It is not every transaction by a person insolvent, or in contemplation of insolvency, that is condemned by the bankruptcy act. It is limited in its scope; and it has been interpreted, in all the particulars in which it comes under consideration in this case, by decisions which I shall cite to you. The provision of the law (section 35), under which this case arises, is a very plain one: "If any person being insolvent, or in contemplation of insolvency, within four months [2] before the filing of the petition by or against him, with a view to give a preference to any creditor or person having a claim against him, or who is under any liability for him, procures any part of his property to be attached, sequestered, or seized on execution, or makes any payment, pledge, assignment, transfer, or conveyance of any part of his property, either directly or indirectly, absolutely or conditionally, the person receiving such payment, pledge, assignment, transfer, or conveyance, or to be benefited thereby, or by such attachment, having reasonable cause to believe such person is insolvent, and that such attachment, payment, pledge, assignment, or conveyance is made in fraud of the provisions of this act,

---

[2] By the amendment to the bankruptcy act, passed June 22d, 1874 [18 Stat. 178], this time is changed to two months, in cases of involuntary bankruptcy.

the same shall be void, and the assignee may recover the property, or the value of it, from the person so receiving it, or so to be benefited." There are certain facts in this case which are not contested, and which are to be taken as true. One is, that this transaction between the house of James K. Place & Co. and Thomas T. Sheffield did take place on the 19th of November, 1867, and that that was within four months prior to the filing of the petition in bankruptcy in this case. It is also conceded, in this case, that James K. Place & Co. were, at that date, the 19th of November, 1867, insolvent, in the sense of this law. Further, it is not in dispute that Mr. Sheffield was a creditor, and, as appears from the evidence, a bona fide creditor, of the house of James K. Place & Co. Whether he was a creditor to this amount of $4,500 because of money which he had loaned to them, or deposited with them, or whether he was a creditor because of salary earned and not paid to him, makes no difference. The debt is of the same character, under the law, in either case. Except as against the bankruptcy law, it is not disputed that the payment of this $4,500 to the defendant was a legitimate payment, a payment such as one man in law and in morals would be obliged to make to another. Nor is it claimed that the payment was one which, but for the bankruptcy law, was not a proper payment to be made at the time it was made, with reference to the maturity of the debt. In other words, it was not a payment in anticipation, which Mr. Sheffield had no right at the time to call upon James K. Place & Co. to make, because it was, as appears from the evidence, a debt payable whenever Mr. Sheffield should call for it. These are matters which are not contested. This case, then, so far as respects points litigated in it, comes down simply to this, which is the only question, under the law, which you have to consider—whether Mr. Sheffield, receiving this $4,500, had reasonable cause to believe that James K. Place & Co. were insolvent on the 19th of November, 1867, and reasonable cause to believe that this payment to him was made with a view that he should have a preference in respect to this $4,500, and obtain this $4,500, dollar for dollar, in full, as against other creditors of the firm of James K. Place & Co., who should receive less than dollar for dollar. I say that that is the only question for your consideration, for the reason that, under the law, as interpreted by the decisions which I have mentioned, if, in this case, this $4,500 was paid to Mr. Sheffield, and received by him from the recognized, proper, official, and authoritative representative of James K. Place & Co., it is of no consequence whether James K. Place or James D. Sparkman knew that this money had been loaned to the firm by Mr. Sheffield (if that was the nature of the debt), and it is of no consequence whether James K. Place or James D. Sparkman, individually, knew that Mr. Morgan, or any one

else, having authority to make payments generally for the firm, had paid this particular $4,500 to Mr. Sheffield, and it is of no consequence whether or not James K. Place or James D. Sparkman had any idea, or motive, or notion, or individual purpose, in respect to this payment. If the payment was made in the ordinary course of business, under proper, general, authority, and was not repudiated by James K. Place & Co., and if James K. Place & Co. were, at the time, insolvent, they being held by the law to know their own condition, unless there is some evidence to show that they did not know it, and had good reason for not knowing it, and if they, being in the habit of having these payments made through these agencies, to individuals occupying the position of Mr. Sheffield, did not act in such manner as to stop and prevent the payment, the payment was, under the law, made with the intent, on the part of James K. Place & Co., to produce all the consequences which the payment, under the circumstances, would naturally and properly produce. And if, under the circumstances, not being prevented by James K. Place & Co., who had the power to prevent it, and who, knowing their condition, were bound to interpose to prevent it, that payment, in their then condition, had the effect to produce the preference, then, in judgment of law, the inevitable conclusion is, that James K. Place & Co. made the payment with a view to give a preference, and on that branch of the case there is no question of fact for the consideration of the jury. Because, if, as is undisputed in this case, the payment was made in the establishment of James K. Place & Co., out of the money of James K. Place & Co., by the recognized agents of James K. Place & Co., at a time when James K. Place & Co. were insolvent, and if James K. Place & Co. did not stop the making of the payment, and if the payment has had the effect to produce a preference in favor of Mr. Sheffield, then the jury are bound to conclude, under the law, that the payment was made by James K. Place & Co. with a view to give a preference. Such is the law, as settled by the highest tribunal in this land, and by all the authorities that have interpreted this statute. Therefore it is, that I say that the only question of fact for your consideration is, whether Mr. Sheffield had reasonable cause to believe,[3] at the time he received this $4,500, that James K. Place & Co. were insolvent, and that this payment was made in fraud of the act—in other words, that this payment would give him the preference, provided you find that it has given him the preference.

In order that there may be no mistake in regard to this matter, I shall say what I

---

[3] By the amendment to the bankruptcy act, passed June 22d, 1874, there must be knowledge that the payment, &c., is made in fraud of the act, and reasonable cause to believe that the party is insolvent.

have to say on the subject in the very language of the supreme court of the United States, on such points as are involved in the question which is the only question for your consideration. In Toof v. Martin, 13 Wall. [80 U. S.] 46, the supreme court interprets the first clause of the 35th section in this way: "That clause was intended to defeat preferences to a creditor made by a debtor when insolvent or in contemplation of insolvency. It declares that any payment or transfer of his property, made by him whilst in that condition, within four months previous to the filing of his petition, with a view to give a preference to a creditor, shall be void, if the creditor has, at the time, reasonable cause to believe him to be insolvent, and that the payment or transfer was made in fraud of the provisions of the bankrupt act; and it authorizes, in such cases, the assignee to recover the property or its value from the party who receives it. * * * The counsel for the appellants have presented an elaborate argument to show that inability to pay one's debts at the time they fall due, in money, does not constitute insolvency, within the provisions of the bankrupt act. The argument is especially addressed to language used by the district judge, * * * to the effect, that, at the time the transfers were made," the transferees "did not believe the bankrupts were able to pay their debts, in money, but were able to do so on a fair market valuation of their property and assets. The district judge held that this was a direct confession of a fact which in law constitutes insolvency," (that is, an inability to pay debts, as they mature, in money, although, on a fair market valuation of their property and assets on one side, and their debts on the other, they were able to pay,) "and observed, that, if the bankrupts could not pay their debts in the ordinary course of business, that is, in money, as they fell due, they were insolvent." The term insolvent, when applied to traders and merchants, in the bankruptcy act, is used to express inability to pay debts as they become due in the ordinary course of business. In such sense the term is used when merchants and traders are said to be insolvent, and that is the sense intended by the bankruptcy act. In the present case it is not disputed that James K. Place & Co. were merchants and traders, within the sense of this rule.

Upon the subject in respect to which I have already made some observations to you, the supreme court, in the same case, says: "It is a general principle, that every one must be presumed to intend the necessary consequences of his acts. The transfer in any case, by a debtor, of a large portion of his property, while he is insolvent, to one creditor, without making provision for an equal distribution of its proceeds to all his creditors, necessarily operates as a preference to him, and must be taken as conclusive evidence that a preference was intended, unless the debtor can show that he was at the time ignorant of his insolvency,

and that his affairs were such that he could reasonably expect to pay all his debts. The burden of proof is upon him, in such case, and not upon the assignee or contestant in bankruptcy." That was a case where a suit was brought by the assignee in bankruptcy against the party who had received a preference, and it is in respect to a suit of that kind that this language is used.

The observations I have cited apply to that part of the case which concerns the insolvent condition of James K. Place & Co., and the view with which this payment, if it operated as a preference, on the evidence, was made by them—a branch of the case in which the court instructs you there is no question of fact for you to pass upon.

We now come to the part of the case upon which a question of fact arises for your consideration—whether Mr. Sheffield, at the time he received this $4,500, had reasonable cause to believe that the bankrupts were insolvent, and that a fraud on the act was intended. On that subject, the supreme court, in the same case, uses this language: "The statute, to defeat the conveyance, does not require that the creditors should have had absolute knowledge on the point" of insolvency of their debtors, "nor even that they should, in fact, have had any belief on the subject. It only requires that they should have had reasonable cause to believe that such was the fact." The minds of individuals are differently constituted. Some persons arrive at their belief on very slight grounds; others hesitate and doubt on every subject. The belief of individuals, under the weakness of human nature, is very apt to be influenced by their desires. The bankruptcy act takes the question entirely out of any such domain. It does not say that the creditor must have believed that the debtor was insolvent. It says, "having reasonable cause to believe." It is for twelve independent jurymen to say, it is for an independent court, in a suit in equity, to say, not whether the creditor believed, in point of fact, but whether he had reasonable cause to believe. Did he shut his eyes? Did he shut his ears? Did he persistently and wilfully refuse to believe, when he had reasonable cause to believe? Were there such things before him that an indifferent person, judging of the matter, would say: "You had reasonable cause to believe this thing; you ought to have believed it; you shut your eyes to it; you shut your ears to it." The matter is not referred to the actual belief of the creditor, depending upon his strength or weakness of mind, upon his actual capacity for judging, in view of his interest; but the test is, reasonable cause to believe, judged of by the ordinary operations of the human mind, as a jury or a court shall, in view of the transaction, determine whether the man had or had not reasonable cause to believe. On that subject the supreme court says, in the same case: "Reasonable cause they must be considered to have had, when such a state of facts was brought to their no-

tice, in respect to the affairs and pecuniary condition of the bankrupts, as would have led prudent business men to the conclusion, that they could not meet their obligations, as they matured, in the ordinary course of business." The supreme court cites, with approbation, on this subject, the case of Scammon v. Cole [Case No. 12,432], an equity suit, which came before one of the judges of the supreme court of the United States, Mr. Justice Clifford, in the circuit court in Maine, where he makes some very clear observations on this subject. The supreme court goes on to say, that the act of congress was designed to secure an equal distribution of the property of an insolvent debtor among his creditors; and that any transfer by an insolvent debtor, made with a view to secure his property, or any part of it, to one creditor, and thus prevent an equal distribution thereof among all his creditors, is a transfer in fraud of the bankruptcy act.

It is for you to say, upon the principles stated to you, whether Mr. Sheffield, at the time he received this $4,500, on the 19th of November, 1867, in view of what, according to the evidence in this case (because you are to be confined to that strictly), had been communicated to him in reference to the condition of the firm of James K. Place & Co., had reasonable cause to believe that it was then insolvent, that it was in such a condition that it was about to stop payment of its debts for want of money with which to pay them as they matured in the ordinary course of business. If he had reasonable cause to believe that, then he had reasonable cause to believe that it was insolvent in the sense of the bankruptcy act. Even though it had not actually stopped the payment of its maturing obligations, he had reasonable cause to believe that it was insolvent if he had reasonable cause to believe that it was in such a condition that the gate must be shut down for want of means to pay, as they matured, its accruing obligations that were coming due. It is necessary, however, that he should not only have had reasonable cause to believe that the firm was insolvent, but that he should have had reasonable cause to believe that this payment to him of the $4,500 was going to operate, in respect to the $4,500, to give to him that $4,500 dollar for dollar, as a preference, while other creditors would not get dollar for dollar for their debts. That is the question of fact, on which you are to pass. If you shall believe that the plaintiff, upon whom is the burden of proof in this case, has made out this reasonable cause to believe on the part of the defendant, the plaintiff is entitled to recover the sum of $4,500, with interest from the commencement of the suit, which is agreed to be the sum of $5,369.75. If the plaintiff has made that out, by a fair preponderance of evidence, he is entitled to your verdict. If he has not made it out, by a fair preponderance of evidence, to your satisfaction, the defendant is entitled to your verdict.

The jury failed to agree on a verdict.